Good morning, your honors. David Kiernan with Jones Day on behalf of appellants. May it please the court, and I'd like to reserve three minutes for rebuttal. This case challenges California prison system's chaplain hiring policy, under which funding is provided and restricted to employ chaplains of only five faiths. It prohibits employment of chaplains of any other faith group, including Wiccans, without exception in regard to the needs or prison system. Is C.D. Stark? You're stating that as if they're actively saying we don't want Wiccans. And that's not true, is it? They just say they have enough money to hire five and no more. Your honor, I don't believe they have said that, that they don't have enough money. You're stating it that way, but they're – well, that's what their particular sect chaplain and make it a paid chaplain. Make arrangements for the person to have a chaplain, if need be. But we're talking about a paid chaplain, and money is involved. They have room for five, but the money. Okay. Go from there. Well, your honor, after discovery, if they could show and justify that they have a constitutional basis to restrict their funding to only five faiths – Your position is that you have a constitutional right to a paid chaplain? Well, there are two arguments, your honor. Answer my question, please. Do you have a constitutional right to a paid chaplain? Yes, your honor. Under these circumstances, yes. Do. Okay. Counsel, it's judge Gould, if I could please interject a question I have related to Judge Duffy's. What does the record show, if it shows, as to how many different religious sects are present at the prison? Apart from the five paid chaplains, if you asked every prisoner what religion they were, how many different chaplains would there be? Your honor, this was decided at the pleading stage, so there has not been discovery on that issue. What has been alleged in the complaint is that the Wiccan inmate population, which is around 75 outnumbers the Jewish population, the Muslim population, and either outnumbers or is equal to the Catholic population. Okay, I understand that. But my question goes to how many different faiths are at the prison. From this calendar, we've had cases that involve two other religions other than Wiccans that aren't in the five you mentioned that they credit. So I'm trying to get a feeling for how many chaplains the five faiths are. Your honor, we don't know that. And to be clear about plaintiff's position, the position is not that the State has to provide a paid chaplain to each and every inmate of their faith. The argument is, under the Establishment Clause, they must apply some neutral criteria to determine how to allocate the funding. They cannot decide, as they've done, that they will restrict funding to only these five faiths. They have not analyzed any criteria. They have not assessed the needs or numbers of any other faith group. In the last 20 years, they have not revised the policy. They continue to restrict it to only five faith groups, four of which are Abrahamic religions, the Jewish, Muslim, and Catholic and two Christian faiths, and the one other is Native American. So it is at best arbitrary and a denominational preference in violation of the Establishment Clause or reflects animus toward minority faiths. Let me – and I appreciate your help on something, counsel. What case or cases do you rely upon for the principle that inmates are entitled as a matter of constitutional right to have a paid chaplain of any faith? What – what case do you rely upon? Your Honor, the free exercise cases, including the Establishment Clause. I thought you were talking about the Establishment Clause issue. You're switching on me. Okay. You want to go to free exercise now? Let's do that. Well, because that's a – whether the inmate has a right to a chaplain is a question of free exercise. Okay. Well, let's go to that then. Is there any in this pleading – that's all we're talking about at this point – have you alleged either that the policy of the prison here has forced your clients to abandon their religion or be unable to practice it at all or that the policy in this case is an endorsement of one religion over another? Have you pled that? We've pled both. Both. Okay. That's right. And on the latter, that's the Establishment Clause. Right. Exactly. Yeah. Like Weaver and Americans United, that by restricting funding to certain religions and prohibiting funding for other religions, that's a clear violation of the Establishment Clause. It's subject to strict scrutiny. Okay. Now, as I understand the case law, particularly the Supreme Court's case law, when you examine these things, you look pretty much at the Turner test in one respect. And I think that the lower court theoretically went through that analysis. Do you agree? No. Okay. Tell me why not. The lower court, which didn't even mention Turner in the free exercise section of its law, that a right to a chaplain or a request for a chaplain can never be a free exercise violation. I think that's the only fair reading of that section of the order, which is in contradiction to this Court's decision in Shakur. It contradicts Turner, the recent decision in Rausser, the Allen Court, the Ward Court, all the courts that the lower court, in fact, cited for the proposition, they all state that all the plaintiff needs to show is that it burdens his sincerely held beliefs. That's clear in the allegations of the First Amendment complaint that they've been deprived the opportunity to exercise their religion. That's one. So, two, the court then should go to the Turner factors and weigh the things. The only place it gets close to looking at Turner is state quoting that they had some reasonable opportunities to exercise their faith, which is the second factor. But what's clear from all the cases that the Court relied upon, Turner factors are a fact-intensive inquiry requiring balancing. So, basically, you can't do that at the pleading stage. You can't do it at the pleading stage. Okay. Shakur rejected on summary judgment, even with affidavits from the State, the free exercise and equal protection clause, that said there's a fact issue. And as I understand it, the one of the pleadings, I can't remember if it was yours or the other side's, indicated that there were volunteer chaplains that were provided and that some of the paid chaplains of other faiths did their best to help out with the Wiccan services. Is that correct? Do I misunderstand that? That there were volunteer chaplains that were provided and that some of the paid chaplains of the five other faiths, at least in some instances, had been of assistance to the Wiccans. Is that correct? That's correct. There are allegations in the First Amendment complaint and the Third Amendment complaint that allege that there's a volunteer chaplain that arrives infrequently because of a number of things, but also does not have the same access or privileges as paid chaplains. And as the lower court and rouse are held, that can be one of the grounds for free exercise violation or evidence of a free exercise violation because the volunteer chaplain cannot provide the same accommodations. Okay. So what I'm struggling with, I mean, I get your point and I may very well agree with you about where we are on this case. The fleeting stage is probably a little premature to make a decision because you can't apply Turner and so on, but I'm having difficulty finding constitutional authority that anybody's entitled to a paid chaplain of their faith. The same question that Judge Duffy raised at the beginning. Can you help me with that? What case from the Supreme Court says that an incarcerated person is entitled to a paid chaplain to help that person carry out his or her religious worship? So if we start it from a blank slate, there's no five faith chaplain hiring policy. Yeah, let's start there. Let's start that. Let's start that. Just as a, no chaplains at all. Let's just say only your plaintiffs are involved and they bring a suit and they say, I can't worship without assistance. That's just the way my faith is and I don't have anybody here. You have to pay for a chaplain to provide that for me. Is there a case that would back that? Your Honor, the cases that hold, that they, that plaintiff, that inmates must be provided with a reasonable opportunity to exercise their faith. And if it, and if they show that by prohibiting all chaplains from coming in, whether it's paid or volunteer, then the case law, including Cruz and Cutter and others, I believe would support and Shakur would support either a paid chaplain or allowing volunteers to come in. The paid issue, whether it's paid or volunteer, I don't think is the question. The question for free exercise is the question for free exercise. But that's a big part of your argument, isn't it? Isn't that the question in your, in this case? I'm sorry? Isn't that the question in this case? You have a volunteer chaplain. All right. You may not like the guy, but there's a volunteer chaplain that comes in. But they have a two-tiered structure, Your Honor. They have the paid chaplains that are allowed to have complete access throughout the prisons. They have privileges that the volunteer chaplain doesn't have. And that's not paid. And does that affect the exercise of the prisoner's right to exercise his religious freedom? Yes. It does. How? Yes. By depriving them regular services, group services, by depriving them of sacraments. Your Honor, I'll tell you what's, what is telling, is that the CDCR in Rausser and in McCollum argued repeatedly, they pay the five-faith chaplains because they have to. Why? Because the five-faith inmates need a chaplain under the free exercise clause, and it would violate the exercise clause without providing it. Examples they gave. Catholics are required to have a Eucharist on Sunday, and therefore need a Roman a week to give that Eucharist. With the Jewish inmates, they argued they needed kosher meals. With Muslim inmates, they needed halal meals. With Native Americans, they needed a chaplain to go out and consecrate a sacred space outside. And your argument is the same is true here. That's exactly right. We, Wiccans are entitled to the same comparable, not the same, but comparable accommodations as the five-faiths. And they should have the opportunity, and this Court in McCollum recognized this. It recognized that Mr. McCollum, a minister trying to get employed by the CDCR, he didn't have a right to apply. It didn't impinge on his free exercise rights, but the Court said in that case that the inmates, it's the inmates' free exercise rights, and they will have their case to prove that like the five-faiths, they're also entitled to a paid chaplain. I'm going to give you some extra time for your response, but I have a quick question for you, and this really I don't think was even the briefs, but you remember Justice Scalia's Smith v. Oregon Correctional Institution or whatever. What role, if any, does that line of jurisprudence have on your free exercise argument? Admittedly, that was a hallucinogenic substance of some sort, but he just said, these laws of general application, just that's the way it goes. Does that apply here? That's the key. The key was the law in that case was a general applicability, neutral as to all religions. Here, the policy is plain. It's a denominational preference. We're going to take tax dollars and fund it to the Catholics and the Protestants. If you're a Wiccan, you don't get any funding from the State of California. One other quick question, and then we're going to have you back. You've got 75 people, according to your pleas, right? What if you had one? Would that make a difference? It could, Your Honor. If in the city service justification, if they applied neutral criteria, and I propose what the Supreme Court and Cruz v. Bito suggested, which is you look at the number of the inmates, you look at the needs and demand of those inmates, then they'd have a justification. There's one, there are funding restrictions, there are other inmates with larger demand, larger numbers. But you're saying it's a balancing test, so that if somebody said, I've got to practice polygamy, or I don't go to heaven, or I've got to sacrifice a bullet every morning, or I don't go to heaven, you're just saying it's kind of weighed on an individual basis, maybe the number of people, maybe exactly what's being asked, maybe you're running to Smith on that one. That's right. I mean, but the case. I understand. But they need neutral criteria, something that they're analyzing, assessing when they're taking tax dollars and deciding to fund religion. What they cannot do is to fund five days, and for the last 20 years since they created the Native American position, ignore all other religions, whether they're Wiccans, Pagans, Mormons, Jehovah's Witnesses. It doesn't matter what the faith is. You're not arguing that you want to take all the paid chaplains out. You're just saying that you've got to treat your clients equally, is that right? Or are you saying, you're arguing that in order for the government to deal with this, they just have to get rid of all the paid chaplains, is that right? Well, that would... That would solve your problem. Well, remedy. That would solve the problem. I thought that what you were saying was they had to have neutral criteria for their choice, so they wouldn't necessarily have to have a chaplain for every single type of religion that was present. They might have criteria that would let them draw lines, but you can't draw those lines up the pleading stage here. Correct, Your Honor. But just with what you've pled, you've pled they have more Wiccans than Jewish prisoners, so it doesn't appear neutral. That's correct, Your Honor. And we also allege, which is based on five years of litigating with the CDCR over the same policy, that they have applied no criteria and have not assessed the needs of Wiccans or other faiths that are not covered by the five-faith policy. Okay. We'll hear from you again, but let's hear now from the government, okay? Thank you, Your Honor. Good morning, Your Honors. And may it please the Court, Deputy Attorney General, for defendants' appellees on the correctional sides of this matter. I will share my time with counsel for the State Personnel Board as well, after about 10 minutes. Okay. The district court properly exercised its discretion in finding that the plaintiffs violated Federal Rule of Civil Procedure 8 and the court's subsequent orders, requiring that the plaintiffs comply with Rule 8 when, after requesting concise and specific allegations rather than disorganized and conclusory rhetoric, and dismissing three of five claims, and issuing then a clarifying order after plaintiffs asked how to proceed, they remarkably filed a longer complaint filled with more irrelevance. The district court stated that the plaintiffs responded contemptuously with the second amended complaint's greatly expanded rhetoric and still lacked factual support. So the government's primary focus is, in effect, Twombly and Iqbal, is that right? Yes, Your Honor. That was the cause of dismissal. After three attempts to amend the complaint, the district court found that the plaintiffs were unable or unwilling to comply with Rule 8 and its directives to comply with Rule 8. In fact, here is the quote from the first amended complaint that's defining the policy at issue for which the defendants sue. After they explain that they allege that CDCR arbitrarily hires chaplains from up to five different faiths, it's defined as that non-neutral, discriminatory, inequitable, biased, and substantially burdensome policy, and the other substantial burdensome policies, practices, and customs that are a consequence of it, such as the failure to provide access to religious accommodation, including without limitation space-time allocation for communal religious practice on an unbiased, equitable, and neutral basis. When you hear it as the ---- Well, one can argue about the wisdom of Iqbal and Twombly. We're bound by it. But it's how does anybody get the evidence necessary to make a proper pleading in a situation like this where you can't do discovery? Well, on the face going to the merits of the complaint, going to the merits of the claim, is that we're dismissed. The allegations of the plaintiffs show that they cannot state a claim that they tried to. Their own allegation is that the Department of Corrections, to accommodate inmates' faiths, have began a hiring policy for chaplains back in 1931 that has evolved to accommodate inmates' faiths, from three faiths initially, then they added a Muslim category, and then a Native American spiritual category. Well, let's take this one point. Again, this is all just arguendo. The counsel has indicated that the pleading indicates there are 75 wickets. There are far fewer Jewish, Mormon, whatever, prisoners involved, say, Roman Catholics as well. Let's say there are five Roman Catholics, you have a paid priest and five Episcopalians or whatever, and they're getting a paid priest and 75 don't. Isn't that sufficient? I'm not talking about the rest of the complaint, but just that alone. Doesn't that frame the issue, at least to move it to the point where there's policies are to apply the Turner and the other tests that really can't be applied at the pleading stage? Numerosity is not the standard that you actually look at. For a free exercise claim, for instance, it's acknowledged that incarceration can limit practice of religion, and a regulation that infringes on that practice is constitutional so long as it reasonably relates to a penological purpose. And what's the penological purpose here? Here, the plaintiffs allege that the chaplain policy does reasonably relate to the purpose of accommodating inmates' religions. What's the penological purpose of having a, again, I'm just picking this out of the air, having a rabbi for, say, five Jewish prisoners and having no paid Wiccan priest? What's the penological underpinning for that? Well, it's to facilitate the inmates' religious practice. The rabbi may not only facilitate Jewish inmates' practice, but they're obliged to also help facilitate and accommodate other inmates' religious practices as well, which is alleged by the plaintiffs here. They point out that the Native American spiritual leader has helped their program in Wiccan in many respects. Well, I get, I understand the volunteer part and that sort of thing. I'm just trying to understand why at this stage of the proceeding, why what has been pled is not sufficient, at least on the equal protection argument, because I fail to see an allegation that satisfies the penological purpose that Turner and others talk about here. All I see is you've got, there's a choice been made, and I mean no disrespect for anybody in this, that they've picked five faiths. Great, wonderful. But they've not picked these others, and apparently there's a fairly large population of people of another faith, in this case, Wiccan. They don't have a paid priest. Counsel has indicated, and I don't know one way or another, that that's, they need somebody to help them practice their religion in the same sense that somebody needs to provide sacraments in the Roman Catholic Church and so on. How do we resolve this at the pleading stage when there's no examination of the penological purpose, no examination of Turner, et cetera? Because the few allegations that plaintiffs have made under Turner provide enough, under recognize that the plaintiffs cannot meet the standard that's necessary to rise to an equal protection violation. They are given an opportunity to pursue their faith that's comparable to that of other inmates adhering to. What is that determination? Their own allegations. It's comparable because they have the facilitation of a volunteer priest as well as the help of staff priests. But there's, if I, forgive me, Counsel, if I, maybe I read something different than you did. I thought they said that not having somebody there that could devote more time and attention to them does inhibit their practice in the same way that for a Catholic not having a priest to administer the sacraments would affect their practice. Did I misread? No, Your Honor. They merely seek to be accommodated as fully as other faiths that have a chaplain of their specific faith. But their allegation is that they are being accommodated. And that is what the law requires, without fear of penalty for adhering to WICCA. And they allege no retaliation or discrimination against them specifically, just not enough accommodation. And even the other things that I'm going to say, Justice Breyer, I'm not going to go into that because of Iqbal and Twombly. Is that right? Well, not just Iqbal and Twombly, actually because of Turner. Under the allegations that are fairly stated, it's shown that they meet the Turner standard of... But how can you tell whether they meet the Turner standard when there's been no discovery, no weighing, no understanding on, for example, the penological purpose? I don't understand that. They allege that the penological purpose is to accommodate inmates. They allege that? That's correct, Your Honor. In excerpts of records 69 through 70, for instance, in the first amended complaint, they describe in detail how California prisons have evolved to offer a chaplain hiring program that grew to open up five categories for different faiths to accommodate inmates. They call it arbitrary, the selection of the different faiths, although they acknowledge that the defendant selected the first three faiths based on what seemed the most predominant religions. That's a numerosity issue that you say we shouldn't consider, right? It's not dispositive. It's just a factor that was alleged by the plaintiffs here. And the Court need not reach the substance that we're discussing right now because of the rampant Rule 8 violations. Very much parallels the McHenry... Counsel, could I have you pause on that one? Yes, Your Honor. Why is there a rampant Rule 8 violation? I read that in the briefs, but I'm not quite getting it. So maybe you could elaborate on that. Certainly, Your Honor. Twombly's got like a dual edge. It's got to be plausible. To make it plausible, I guess you have to say more than people thought they had to say to be a short and plain statement of the claim under Rule 8 originally. But now if you say too much to make it plausible, then the Court says you're not being concise enough. So I'm confused a little bit by the doctrine here. What's wrong about the way they tried to plead it? It's not the mere length of the pleadings. It's the confusion inherent in them and the disorganization, the lack of notice that the defendants are given through the pleadings. There's a 16-point list of the alleged burdens that the plaintiffs suffer, which is completely devoid of any who, what, when, where detail, depriving defendants from raising defenses like plaintiffs standing to raise the claims, statute of limitations, whether they exhausted their administrative remedies, whether the correct defendants are even sued. And the claims don't clearly say who is sued for what, but rather, for instance, under the Establishment Clause claim, it says, plaintiffs against the official capacity defendants, Smith, Grannis, and Plaintiff Hill against Lattimore. That doesn't clearly say who's being sued in their official or personal capacities for what. You can refer back to earlier in the complaint when they list the parties, they note that all individuals are collectively sued in their official capacity and will be called official capacity defendants when in that capacity. And then on the next page in Excerpts of Record 66, plaintiffs also sue Smith and Grannis in their individual capacity, and then Plaintiff Hill sues Lattimore in her individual capacity. But going back to plaintiffs against the official capacity defendants, Smith, Grannis, and Plaintiff Hill against Lattimore, it's not clear that that's in the personal capacity. It hasn't clearly put the defendants on notice. And that is what Rule 8 serves to do. It's very parallel to the McHenry v. Wren case, which we cite in the argument. The complaints are a jumble of irrelevant detail and theories that presents a puzzle box that not only the defendants and the court have to assemble, and there is no assurance that the parties and the court are assembling the puzzle box in the same manner. And the second amended complaint was even longer, despite alleging only two of five claims. What kind of box? A puzzle box, Your Honor. Puzzle box. In the 31-page second amended complaint, 27 pages of grievances are attached, which are photocopied, handwritten, and yet they are, quote, incorporated by reference as if specifically alleged in the body of the complaint. That's at Excerpts of Record 155. Do you want to save any time for your co-counsel? Yes. If the Court has no further questions, I will yield to the speakers. Thank you. May it please the Court, Michael Gow on behalf of the State Personnel Board defendants. And the State Personnel Board defendants ask this Court to affirm their dismissal from the case, because even if it's sent back down on remand, and even if Ms. Hill is able to establish a constitutional violation, the Court below can still fashion meaningful injunctive relief without the SBB in the case. I didn't quite understand what the Personnel Board would have to do with the issues alleged here. That's exactly our point, Your Honor. I believe the argument on behalf of the plaintiffs is that we need to be in the case, because if in the event they get their chosen form of relief, which is a paid WIC and chaplain by way of a classification, statewide classification, that the SBB must stay in order for the court below to enjoin the CDCR and, as a necessary party under Rule 19, the SBB. And we're under the law, we are not a necessary party, the SBB, because, again, meaningful relief can be had short of the SBB's involvement. And as Plaintiffs' Counsel made clear, it's not about a paid chaplain or a volunteer chaplain. It's all about access. And that is something for the CDCR to decide and the State of California as the sole state agency with the authority to determine the nature of inmate religious needs accommodations, not the SBB. And so, for example, volunteers could be dedicated to Ms. Hill specifically. This is not a class action. This is a single plaintiff claim here. Or there could be a personal services contract that could be had by the CDCR under Government Code Section 19130, where a paid cleric, a WIC and cleric, could be devoted to Ms. Hill exclusively or whatever the CDCR comes up with. But that's for the CDCR to decide. And even if the court below were to say, essentially, we need a classification of some sort here, the SBB would not be a necessary party because it's presumed that the state government, which would be the SBB, the Department of Personnel Administration, now called CalHR, and the state legislature, who would ultimately approve the new classification by funding it, would all act according to the law. And Federalism counsels against this court becoming involved at that level to dictate to each of those state entities how to do their state functions. So if the court doesn't have any other questions, I'll have them. I have no questions. No questions. Thank you very much. Thank you. Counsel, we'll give you two minutes of rebuttal. Let me address briefly, Your Honor, the Rule 8. And it is unclear, at least to me in reading the district court's order, whether to dismiss the Third Amendment complaint based on Rule 8 or 12B6. My reading is the judge addressed the substance of the claims and dismissed it under Rule 12. So your thinking is that you satisfied Rule 8 on the Third Amendment complaint? Absolutely, Your Honor. It set forth who the parties were, what the claims were. It set forth the factual details supporting each of the claims. It included subheadings, headings and subheadings, to allow a reader to walk through the complaint and understand the facts and the claims. With respect to the arguments that the defendants don't understand or don't have enough facts for exhaustion or whether the correct defendants were included in the Third Amendment complaint, there's an entire section with the heading stating exhaustion of administrative remedies. And it includes all the facts attached to the complaint or the 602s demonstrating that the administrative remedies had been exhausted. In fact, the evidence that was attached to the Third Amendment complaint states from Office of Grants the administrative remedies have been exhausted. So the argument that they didn't understand the complaint is not credible, particularly given that the Third Amendment complaint is virtually identical to the First Amendment complaint. The court there and the CDCR understood that complaint. The court held that it stated an establishment cause claim. It methodically went through each of the claims, dismissed them for a number of reasons. And the court, the CDCR's own brief, and this is at Excerpt of Record 123, the CDCR states that plaintiffs challenged the chaplain hiring policy for failure to employ a Wiccan chaplain to assist them. CDCR has a chaplain hiring policy that prefers five faiths, Protestant, Catholic, Jewish, Muslim, and Native Americans, and prohibits the hiring of chaplains of any other faith, if that's accurate. That is our claim. Volunteer chaplaincy for Wiccans is sparse or nonexistent and consequently wholly inadequate to provide Hartman and Hill's religious faith. And so we're about out of time. We can read what the district court said, but I take your point. You think that the district court, in at least with respect to the Third Amendment complaint, no longer had a Rule 8 issue, did not rule on that basis. We'll double-check, of course, to see what the story is there. But this is a question. And to the extent that it did, it was an abuse of discretion to do it solely on Rule 8. Okay. Go ahead, Judge. No, I was just going to say, one final question. Of your, well, at least three basic complaints, which is the strongest of the three, in your view? The strongest of the three? In terms of, if we agreed with you that the pleading stage is not the stage to address some of these issues, and that Iqbal and Twombly Rule 8 had been satisfied, which is the, if you were picking one and you had to say, okay, I can't get all three, what's the one you think is the stronger or strongest, rather, of the three? The Establishment Clause. The denominational preference without constitutional justification. Okay. Well, thank you all. Very interesting argument. This case is submitted. We understand that our colleagues from Botswana will be departing to go elsewhere, unless they want to stay, they're certainly welcome to. But thank you for coming, and welcome on the Council.  Thank you, Your Honors. This case is submitted.
judges: Duffy, Gould, Smith